1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| DAVID TRISTAN, individually and on behalf of all others similarly situated,<br><br>                       Plaintiff,<br><br>    v.<br><br>RECEIVABLES PERFORMANCE MANAGEMENT, LLC,<br><br>                 Defendant. | Case No.: _____<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION .................................................................................................. 1

II.    PARTIES ............................................................................................................... 2

III.   JURISDICTION AND VENUE .......................................................................... 2

IV.    FACTUAL BACKGROUND .............................................................................. 3

       A.     Overview of RPM ................................................................................... 3

       B.     The Data Breach ..................................................................................... 4

       C.     Impact of the Data Breach ..................................................................... 5

V.     CLASS ACTION ALLEGATIONS .................................................................... 9

FIRST CAUSE OF ACTION  Negligence ....................................................................... 11

SECOND CAUSE OF ACTION  Negligence Per Se ....................................................... 13

THIRD CAUSE OF ACTION  Breach of Confidence...................................................... 14

FOURTH CAUSE OF ACTION  Breach of Implied Contract ........................................ 15

FIFTH CAUSE OF ACTION  Invasion of Privacy.......................................................... 16

DEMAND FOR JURY TRIAL ......................................................................................... 18

CLASS ACTION COMPLAINT - i
Case No.



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

Plaintiff David Tristan ("Plaintiff"), individually and on behalf of all others similarly situated (collectively, "Class members"), by and through his attorneys, brings this Class Action Complaint against Defendant Receivables Performance Management, LLC ("Defendant" or "RPM") and complains and alleges upon personal knowledge as to himself and information and belief as to all other matters.

## I.    INTRODUCTION

1.    Plaintiff brings this class action against RPM for its failure to secure and safeguard his and approximately 3.7 million other individuals' private and confidential information, including names, Social Security Numbers (SSN), and other personally identifying information (collectively, "PII").

2.    RPM is a debt collection company based in Lynnwood, Washington that provides accounts receivable management services in a wide variety of industries, including healthcare, retail card, credit card, auto finance, utilities, telecommunication companies, and more.[1]

3.    On November 21, 2022, RPM reported that it was the target of a 2021 ransomware attack that compromised certain sensitive consumer information stored on its computer network.[2] According to RPM, unauthorized access to RPM's systems first occurred on April 8, 2021, and a ransomware attack on the company followed on May 12, 2021. During this period, the sensitive consumer data, including the names and Social Security Numbers of approximately 3,766,573 individuals were accessible to unauthorized third parties (the "Data Breach").

4.    Despite learning of the Data Breach on or about May 12, 2021, RPM did not publicly announce or notify the affected individuals until November of 2022, more than 18 months later. Defendant's notification and the information it has disclosed to date has been vague and incomplete, and it has offered merely one year credit monitoring and identity theft services to those affected.

---

[1] http://www.receivablesperformance.com/about-us (last visited Dec. 1, 2022).

[2] *Data Breach Notifications*, Office of the Maine Attorney General, https://apps.web.maine.gov/online/aeviewer/ME/40/11ca5a7c-b09f-404a-81c6-b683305543a1.shtml (last visited Dec. 1, 2022).

CLASS ACTION COMPLAINT - 1
Case No.



HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

5.      RPM's failures to ensure that its systems were adequately secure fell far short of its obligations and Plaintiff's and Class members' reasonable expectations for data privacy, jeopardized the security of Plaintiff's and Class members' PII, including highly sensitive Social Security numbers, and exposed Plaintiff and Class members to fraud and identity theft or the serious risk of fraud and identity theft.

6.      As a result of RPM's conduct and the resulting Data Breach, Plaintiff's and Class members' privacy has been invaded, their PII has been exfiltrated, exposed to, and is now in the hands of criminals, they have suffered fraud or identity theft or face a substantial risk of identity theft and fraud, they have suffered a privacy injury, they have lost hours of time dealing with the fallout of the Data Breach, and they have been otherwise injured. Accordingly, these individuals now must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

## II.      PARTIES

7.      Plaintiff David Tristan is a resident of San Antonio, Texas. RPM received or Plaintiff Tristan's PII was otherwise provided to RPM in the course of conducting its business. Plaintiff Tristan received an email from RPM on or about December 1, 2022 notifying him that his PII may have been exposed in the Data Breach.

8.      Defendant Receivables Performance Management, LLC is a debt collection agency with its principal place of business located at 20816 44th Avenue West, Lynnwood, Washington 98036.

## III.      JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of five million dollars ($5,000,000.00), and is a class action involving 100 or more class members. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

10.     This Court has personal jurisdiction over Defendant because Defendant is authorized to do, and does, business in the State of Washington, providing services to citizens of this State and throughout the US, including Plaintiff.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because the events or omissions giving rise to the conduct alleged herein occurred in, were directed to, and/or emanated from this District; Defendant's principal place of business is in this District; Defendant transacts substantial business and has agents in this District; and a substantial part of the conduct giving rise to Plaintiff's claims occurred in this judicial District.

## IV.     FACTUAL BACKGROUND

### A.     Overview of RPM

12.     RPM is a debt collection agency located in Lynnwood, Washington. RPM offers account receivables management services in a wide variety of industries, including healthcare, retail card, credit card, auto finance, utilities, telecommunication companies, and more.[3]

13.     RPM touts itself as "a national leader in accounts receivable management."[4] Founded in August of 2002, "RPM has grown to 370 employees with branches in two locations, 2009 estimated revenue of over $18,300,000 and current active debt portfolios of $3.7 billion."[5]

14.     In the regular course of its business, RPM collects, stores, utilizes and otherwise has access to private and confidential information.

15.     In its Privacy Policy, maintained on its website, RPM states that "[a]s financial services professionals entrusted with sensitive information, we respect the privacy of our clients, and the privacy of their customers. We are committed to treating customer's information responsibly."[6]

---

[3] http://www.receivablesperformance.com/services (last visited Dec. 1, 2022).

[4] http://www.receivablesperformance.com/home (last visited Dec. 1, 2022).

[5] http://www.receivablesperformance.com/leadership (last visited Dec. 1, 2022).

[6] http://www.receivablesperformance.com/PrivacyPolicy.aspx (last visited Dec. 1, 2022).



16.     RPM "recognizes and respects the information/legislation set forth by Federal (GLB, FDCPA, HIPAA) and State guidelines pertaining to privacy matters regarding client, customer and other 3rd party information."

17.     RPM's Privacy Policy "serves as a standard for all RPM employees for the collection, use, retention, disposal and security of private information," such as Plaintiff's and Class members' PII.  It states, in part:

> We will collect, retain and utilize all information that we believe will be useful to conduct our business and to provide quality services to our clients. We have established procedures to ensure that information is accurate, current and complete in accordance with reasonable business practices. Our employees are educated on the importance of maintaining the confidentiality of information and of our privacy policy. In the event of a privacy breach by an employee, appropriate disciplinary action will be taken. We will maintain physical, electronic and procedural safeguards to guard against unauthorized access to information.[7]

**B.     The Data Breach**

18.     On or about May 12, 2021, RPM discovered a data security incident that impacted its server infrastructure and took its systems offline.[8] While RPM claims to have discovered the Data Breach as early as May 2021, RPM did not begin informing victims of the Data Breach until on or around November 21, 2022.[9]

19.     According to RPM, it "responded immediately by physically disconnecting all equipment and began undertaking necessary efforts to restore its systems. Immediately following the incident and over a 36-hour time frame, RPM rebuilt its shared servers from the ground up and removed and re-installed all collection and dialing software on all equipment."[10]

20.     RPM retained a forensic investigation firm which determined that first access to RPM's systems occurred on approximately April 8, 2021, with the ransomware launched on May 12, 2021. RPM admitted that "[w]hile the findings of the forensic investigation were not

---

[7] http://www.receivablesperformance.com/PrivacyPolicy.aspx (last visited Dec. 1, 2022).
[8] https://ago.vermont.gov/wp-content/uploads/2022/11/2022-11-18-Receivables-Performance-Management-Data-Breach-Notice-to-Consumers.pdf (last visited Dec. 1, 2022).
[9] *Id.*
[10] *Id.*



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

conclusive, the data security incident may have resulted in unauthorized access to and/or acquisition of certain data on RPM's systems."[11]

21.      To date, RPM has provided little additional information regarding the nature of the data impacted in the breach and many details of the Data Breach remain in RPM's exclusive control.

22.      RPM has disclosed that the sensitive PII of approximately 3,766,573 individuals was affected by the Data Breach. RPM has also confirmed that the compromised data includes individuals' names and Social Security Numbers.[12]

**C.      Impact of the Data Breach**

23.      The actual extent and scope of the impact of the Data Breach remains uncertain.

24.      RPM indicated that it has "also obtained confirmation to the best of its ability that the information is no longer in the possession of the third party(ies) associated with this incident."[13] Unfortunately for Plaintiff and Class members, the damage is already done. There is no guarantee that the criminals will suddenly act honorably and destroy sensitive PII. In fact, there is no motivation for them to do so, given the burgeoning market for sensitive PII on the dark web.

25.      The Data Breach creates a heightened security concern for Plaintiff and Class members because SSNs and other sensitive financial information was potentially disclosed. Theft of SSNs creates a particularly alarming situation for victims because those numbers cannot easily be replaced. In order to obtain a new number, a breach victim has to demonstrate ongoing harm from misuse of her SSN, and a new SSN will not be provided until after the harm has already been suffered by the victim.

26.      Given the highly sensitive nature of SSNs, theft of SSNs in combination with other personally identifying information (e.g., name, address, date of birth) is akin to having a master

---

[11] *Id.*

[12] *Data Breach Notifications*, Office of the Maine Attorney General, https://apps.web.maine.gov/online/aeviewer/ME/40/11ca5a7c-b09f-404a-81c6-b683305543a1.shtml (last visited Dec. 1, 2022).

[13] http://www.receivablesperformance.com/PrivacyPolicy.aspx (last visited Dec. 1, 2022).



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

key to the gates of fraudulent activity. Per the United States Attorney General, Social Security numbers "can be an identity thief's most valuable piece of consumer information."[14]

27.    RPM had a duty to keep Plaintiff's and Class members' PII confidential and to protect it from unauthorized disclosures. Plaintiff and Class members entrusted RPM with their sensitive PII with the understanding that RPM would comply with its obligations to keep such information confidential and secure from unauthorized disclosures.

28.    RPM's data security obligations were particularly important given the substantial increase in data breaches in recent years, which are widely known to the public and to anyone in RPM's industry.

29.    Data breaches are by no means new and they should not be unexpected. These types of attacks should be anticipated by companies that store sensitive and personally identifying information, and these companies must ensure that data privacy and security is adequate to protect against and prevent known attacks.

30.    At all relevant times, RPM knew, or should have known, Plaintiff's and Class members' PII was a target for malicious actors. Despite such knowledge, RPM failed to implement and maintain reasonable and appropriate data privacy and security measures to protect Plaintiff's and Class members' PII from cyber-attacks that RPM should have anticipated and guarded against.

31.    It is well known amongst companies that collect, maintain, and store sensitive personally identifying information that the sensitive information—like the SSNs—is valuable and frequently targeted by criminals. In a recent article, one commentator noted that "[d]ata breaches are on the rise for all kinds of businesses . . . . Many of them were caused by flaws in . . . systems either online or in stores."[15]

32.    Identity theft victims are frequently required to spend many hours and large amounts of money repairing the impact to their credit. Identity thieves use stolen personal

---

[14] *Fact Sheet: The Work of the President's Identity Theft Task Force*, Department of Justice (Sept. 19, 2006), https://www.justice.gov/archive/opa/pr/2006/September/06_ag_636.html.

[15] Dennis Green, Mary Hanbury & Aine Cain, *If you bought anything from these 19 companies recently, your data may have been stolen*, Business Insider (Nov. 19, 2019, 11:05 A.M.), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1.



HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

information for a variety of crimes, including credit card fraud, tax fraud, phone or utilities fraud, and bank/finance fraud.

33. There may be a time lag between when sensitive personal information is stolen and when it is used. According to the GAO Report:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[16]

34. With access to an individual's PII, criminals can do more than just empty a victim's bank account—they can also commit all manner of fraud, including: obtaining a driver's license or official identification card in the victim's name but with the thief's picture; using the victim's name and SSN to obtain government benefits; or, filing a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's SSN, rent a house, or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[17]

35. PII is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the dark web and the "cyber black-market" for years. As a result of recent large-scale data breaches, identity thieves and cyber criminals have openly posted stolen SSNs and other PII directly on various illegal websites making the information publicly available, often for a price.

36. A recent study concluded that the value of information available on the dark web sufficient to commit identity theft or fraud is about $1,010 per identity. The study identified that "[a] full range of documents and account details allowing identity theft can be obtained for

---

[16] Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown, GovInfo.gov (June 4, 2007), https://www.govinfo.gov/content/pkg/GAOREPORTS-GAO-07-737/html/GAOREPORTS-GAO-07-737.htm.

[17] *Warning Signs of Identity Theft*, Federal Trade Commission, https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last visited Dec. 2, 2022).



HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

$1,010."[18] Data breaches and identity theft have a crippling effect on individuals and detrimentally impact the entire economy as a whole.

37.     Despite the known risk of data breaches and the widespread publicity and industry alerts regarding other notable (similar) data breaches, RPM failed to take reasonable steps to protect its clients' and customers' sensitive PII from being breached and exposed to criminals; instead leaving Plaintiff and Class members exposed to risk of fraud and identity theft.

38.     RPM is, and at all relevant times has been, aware that the sensitive PII it collects, handles, stores, and utilizes in its regular course of business is highly sensitive. RPM is aware of the importance of safeguarding that information and protecting its systems, clients, and customers from security vulnerabilities.

39.     RPM was aware, or should have been aware, of regulatory and industry guidance regarding data security.

40.     Despite the well-known risks of hackers and cybersecurity intrusions, RPM failed to employ adequate data security measures in a meaningful way in order to prevent a breach of its systems. RPM permitted Plaintiff's and Class members' PII to be compromised and disclosed to criminals by failing to take reasonable steps against an obvious threat.

41.     Industry experts are clear that a data breach is indicative of data security failures. Indeed, industry-leading research and advisory firm Aite Group has identified that: "If your data was stolen through a data breach that means you were somewhere out of compliance" with payment industry data security standards.[19]

42.     As a result of the events detailed herein, Plaintiff and Class members suffered harm and loss of privacy, and will continue to suffer future harm, resulting from the Data Breach, including, but not limited to: invasion of privacy; loss of privacy; fraud and identity theft; unreimbursed losses relating to fraud and identity theft; loss of value and loss of possession and

---

[18] *You Are Worth $1,010 on the Dark Web, New Study by PrivacyAffairs Finds,* Cision PR Newswire (Mar. 8, 2021, 5:15 ET), https://www.prnewswire.com/news-releases/you-are-worth-1-010-on-the-dark-web-new-study-by-privacyaffairs-finds-301241816.html.

[19] Lisa Baertlein, *Chipotle Says Hackers Hit Most Restaurants in Data Breach*, Reuters (May 26, 2017), http://www.reuters.com/article/us-Flagstar-cyber-idUSKBN18M2BY.



privacy of PII; harm resulting from damaged credit scores and information; loss of time and money preparing for and resolving fraud and identity theft; loss of time and money obtaining protections against future identity theft; and other harm resulting from the unauthorized use or threat of unauthorized exposure of PII.

43.     As a result of the Data Breach, Plaintiff's and Class members' privacy has been invaded, their PII is now in the hands of criminals, they have suffered concrete data breach injury, they face a substantially increased risk of identity theft and fraud, and they have taken and must continue to take time-consuming action to protect themselves from such identity theft and fraud.

## V.   CLASS ACTION ALLEGATIONS

44.     Plaintiff brings this action on behalf of himself and the following Classes pursuant to Federal Rule of Civil Procedure 23(a) and (b):

> **Nationwide Class**
> All individuals residing in the United States whose PII was compromised in the data breach disclosed by Receivables Performance Management on or about November 21, 2022, including all residents of the United States who were sent a notice of the data breach.

> **Texas Class**
> All individuals residing in the state of Texas whose PII was compromised in the data breach disclosed by Receivables Performance Management on or about November 21, 2022, including all residents of Texas who were sent a notice of the data breach.

45.     Excluded from the Classes are Defendant; any agent, affiliate, parent, or subsidiary of Defendant; any entity in which Defendant has a controlling interest; any officer or director of Defendant; any successor or assign of Defendant; and any Judge to whom this case is assigned as well as his or her staff and immediate family.

46.     These Classes are collectively referred to herein as the "Class." Plaintiff reserves the right to amend these class definitions.

47.     Plaintiff satisfies the numerosity, commonality, typicality, and adequacy prerequisites for suing as a representative party under Rule 23.

48.     **Numerosity.** While the precise number of Class members has not yet been determined, members of the Classes are so numerous that their individual joinder is impracticable,


HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

as the proposed Classes appears to include approximately 3,766,573 individuals who are geographically dispersed.

49.   **Ascertainability.**   Class members are readily identifiable from information in RPM's possession, custody, or control.

50.   **Typicality.**   Plaintiff's claims are typical of Class members' claims as each arises from the same Data Breach. Plaintiff and all Class members were injured through RPM's uniform misconduct, and Plaintiff's claims are identical to the claims of the Class members they seek to represent. Accordingly, Plaintiff's claims are typical of Class members' claims.

51.   **Adequacy.** Plaintiff's interests are aligned with the Class he seeks to represent, and Plaintiff has retained counsel with significant experience prosecuting complex class action cases, including cases involving alleged privacy and data security violations. Plaintiff and undersigned counsel intend to prosecute this action vigorously. The Classes' interests are well-represented by Plaintiff and undersigned counsel.

52.   **Commonality.**   Plaintiff's and Class members' claims raise predominantly common factual and legal questions that can be answered for all Class members through a single class-wide proceeding.  For example, to resolve any Class member's claims, it will be necessary to answer the following questions. The answer to each of these questions will necessarily be the same for each class member:

a.   Whether Defendant engaged in the wrongful conduct alleged herein;

b.   Whether Defendant unlawfully used, maintained, lost or disclosed Class members' PII and/or other personal or financial information;

c.   Whether Defendant unreasonably delayed in notifying affected individuals of the Data Breach and whether the belated notice was adequate;

d.   Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

e.   Whether Defendant's conduct was negligent or negligent per se;



HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

f.      Whether Defendant's conduct in connection with the Data Breach and notification thereof violated consumer data privacy statutes;

g.      Whether Defendant's conduct breached the terms of any implied contracts with Plaintiff and Class members;

h.      Whether Defendant violated privacy rights and invaded Plaintiff's and Class members' privacy; and

i.      Whether Plaintiff and Class members are entitled to damages, equitable relief, or other relief, and if so, in what amount.

53.    In addition to satisfying the prerequisites of Rule 23(a), Plaintiff satisfies the requirements for maintaining a class action under Rule 23(b).  Common questions of law and fact predominate over any questions affecting only individual members and a class action is superior to individual litigation.

## **FIRST CAUSE OF ACTION**

### **Negligence**
### **(On Behalf of Plaintiff and the Classes)**

54.    Plaintiff incorporates by reference all foregoing factual allegations.

55.    In order to provide accounts receivable services to its clients, RPM collected, was entrusted with, stored, and otherwise had access to the PII of Plaintiff and Class members, including personally identifying information and Social Security numbers, among other information.

56.    RPM owed a duty of care to Plaintiff and Class members whose PII had been entrusted to it. RPM had a duty to ensure the protection and safeguarding of that PII.

57.    RPM breached its duties to Plaintiff and Class members by failing to do all of the foregoing and failing provide fair, reasonable, or adequate data security in connection with transacting business.

58.    RPM's duty of care arises from its knowledge that it is entrusted with highly sensitive PII that RPM is intended to, and represents that it will, handle securely. Indeed, in its Privacy Policy, RPM represents that it "recognize[s] and respect[s] the privacy expectations of all



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

people and make the safekeeping of all information a priority" and that it "will maintain physical, electronic and procedural safeguards to guard against unauthorized access to information."

59.     RPM's duty of care also arises from the statutory framework of laws including Section 5 of the FTC Act, the Gramm-Leach-Bliley Act, and the Washington State Consumer Protection Act, all of which required RPM to properly and securely handle and maintain sensitive PII, and all of which RPM violated as discussed *infra*.

60.     RPM also had a duty to promptly and timely notify Plaintiff and Class members of the Data Breach in order to prevent additional harm, but failed to do so. Instead, RPM unreasonably delayed in notifying impacted persons of the breach, causing harm due to the delay that was foreseeable, including preventing Plaintiff and Class members from promptly protecting themselves in response to the Data Breach.

61.     But for RPM's wrongful and negligent breach of duties owed to Plaintiff and Class members, Plaintiff and Class members would not have been injured.

62.     There is substantial nexus between RPM's alleged misconduct and the injuries suffered by Plaintiff and Class members. Plaintiff and Class members were the foreseeable victims of RPM's misconduct and data security failures, and their harm was the natural and foreseeable consequence of such misconduct and failures, and RPM's breaches of duties owed. RPM acted with wanton disregard for the security of Plaintiff's and Class members' PII.

63.     A "special relationship" exists between RPM, on the one hand, and Plaintiff and Class members, on the other hand. RPM entered into a "special relationship" with Plaintiff and Class members by agreeing to accept, store, and have access to sensitive PII provided by Plaintiff and Class members.

64.     Plaintiff and Class members have suffered harm as a direct and proximate result of RPM's negligence.  These victims' loss of control over the PII exposed subjects each of them to a greatly enhanced risk of identity theft, credit and bank fraud, Social Security fraud, tax fraud, and myriad other types of fraud and theft. Plaintiff and Class members suffered and continue to suffer further harm by virtue of RPM's failure to give timely and complete notice to them concerning the Data Breach and the risks they face, and are entitled to damages in an amount to be proven at trial.



## SECOND CAUSE OF ACTION

### Negligence Per Se
### (On Behalf of Plaintiff and the Classes)

65.     Plaintiff incorporates by reference all foregoing factual allegations.

66.     Pursuant to the Federal Trade Commission Act (15 U.S.C. § 45), and the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801, *et seq.* ("GLBA"), among other statutes, RPM had a duty to provide adequate data security practices in connection with safeguarding Plaintiff's and Class members' PII.

67.     RPM breached its duties to Plaintiff and Class members under the Federal Trade Commission Act (15 U.S.C. § 45), and the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801, *et seq.*, among other statutes, by failing to provide fair, reasonable, or adequate data security in order to safeguard Plaintiff's and Class members' PII.

68.     Specifically, the GLBA states that "[i]t is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. § 6801(a). The GLBA gave rise to, and RPM had, a duty of reasonable care to protect Plaintiff's and Class members' PII. RPM fell short in that duty, in violation of the GLBA. RPM violated the GLBA and related regulations by failing to secure Plaintiff's and Class members' PII from exposure to unauthorized third parties, by failing to identify foreseeable risks to the security of sensitive data and maintain protocols to control those risks, and by failing to maintain appropriate safeguards for the sensitive data in its possession.

69.     RPM's failure to comply with applicable laws and regulations constitutes negligence per se.

70.     But for RPM's wrongful and negligent breach of duties owed to Plaintiff and Class members, Plaintiff and Class members would not have been injured.

71.     The injury and harm suffered by Plaintiff and Class members was the reasonably foreseeable result of RPM's breach of its duties. RPM knew or should have known that it was



HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

failing to meet its duties, and that its breach would cause Plaintiff and Class members to experience the foreseeable harms associated with the exposure of their PII.

72.     As a direct and proximate result of RPM's negligent conduct, Plaintiff and Class members have been harmed or now face an increased risk of future harm. As a direct and proximate result of RPM's negligent conduct, Plaintiff and Class members have suffered injury and are entitled to damages in an amount to be proven at trial.

**<u>THIRD CAUSE OF ACTION</u>**

**Breach of Confidence**
**(On Behalf of Plaintiff and the Classes)**

73.     Plaintiff incorporates by reference all foregoing factual allegations.

74.     At all times during Plaintiff's and Class members' interactions with RPM, RPM was fully aware of the sensitive and confidential nature of Plaintiff's and Class members' PII that it collected and stored.

75.     As alleged herein and above, RPM's relationship with Plaintiff and Class members was governed by promises and expectations that Plaintiff and Class members' PII would be collected, stored, and protected in confidence, and would not be accessed and/or viewed by the public or any unauthorized third parties.

76.     RPM voluntarily received, in confidence, Plaintiff's and Class members' PII with the understanding that the PII would not be accessed and/or viewed by the public or any unauthorized third parties.

77.     Due to RPM's failure to prevent, detect, and avoid the Data Breach from occurring by, *inter alia*, not following best information security practices to secure Plaintiff's and Class members' PII, Plaintiff's and Class members' PII a was accessed and/or viewed by the public or any unauthorized third parties beyond Plaintiff's and Class members' confidence, and without express permission.

78.     As a direct and proximate cause of RPM's actions and/or omissions, Plaintiff and Class members have suffered damages, as alleged therein.


1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

79.     But for RPM's failure to maintain and protect Plaintiff's and Class members' PII in violation of the parties' understanding of confidence, their PII would not have been accessed and/or viewed by unauthorized third parties.

## FOURTH CAUSE OF ACTION

### Breach of Implied Contract
### (On Behalf of Plaintiff and the Classes)

80.     Plaintiff incorporates by reference all foregoing factual allegations.

81.     In connection with RPM's accounts receivable services, Plaintiff and Class members entered into implied contracts with RPM.

82.     Pursuant to these implied contracts, Plaintiff and Class members, whether directly or through RPM's clients, provided RPM with their PII. In exchange, RPM agreed, among other things: (1) to provide accounts receivable services, (2) to take reasonable measures to protect the security and confidentiality of Plaintiff's and Class members' PII and (3) to protect Plaintiff's and Class members' PII in compliance with federal and state laws and regulations and industry standards.

83.     The protection of PII was a material term of the implied contracts between Plaintiff and Class members, on the one hand, and RPM, on the other hand. Had Plaintiff and Class members known that RPM would not adequately protect their PII, they would not have provided RPM, whether directly or through RPM's clients, with their sensitive PII.

84.     Plaintiff and Class members performed their obligations under the implied contract when they provided RPM with their PII—directly or through RPM's clients—for RPM's accounts receivable services.

85.     Necessarily implicit in the agreements between Plaintiff/Class members and RPM was RPM's obligation to take reasonable steps to secure and safeguard Plaintiff's and Class members' PII.

86.     RPM breached its obligations under its implied contracts with Plaintiff and Class members by failing to implement and maintain reasonable security measures to protect their PII.



87.     RPM's breach of its obligations of its implied contracts with Plaintiff and Class members directly resulted in the exposure of their PII.

88.     The damages sustained by Plaintiff and Class members as described above were the direct and proximate result of RPM's material breaches of its agreements.

89.     Plaintiff and other Class members were damaged by RPM's breach of implied contracts because: (i) they have suffered actual harm or identity theft; (ii) they face a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their PII was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their PII has been breached; (v) they were deprived of the value of their PII, for which there is a well-established national and international market; and/or (vi) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face.

## FIFTH CAUSE OF ACTION

### Invasion of Privacy
### (On Behalf of Plaintiff and the Classes)

90.     Plaintiff incorporates by reference all foregoing factual allegations.

91.     Plaintiff and Class members had a reasonable expectation of privacy in the PII that RPM disclosed without authorization.

92.     By failing to keep Plaintiff's and Class members' PII safe and allowing disclosure of this PII to unauthorized parties for unauthorized use, RPM unlawfully invaded Plaintiff's and Class members' privacy by, *inter alia*:

      a.     intruding into Plaintiff's and Class members' private affairs in a manner that would be highly offensive to a reasonable person; and

      b.     invading Plaintiff's and Class members' privacy by improperly using their PII properly obtained for a specific purpose for another purpose, or disclosing it to unauthorized third parties;

      c.     failing to adequately secure their PII from disclosure to unauthorized persons;


HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

d.    enabling the disclosure of Plaintiff's and Class members' PII without consent.

93.    RPM knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiff's and Class members' position would consider its actions highly offensive.

94.    RPM knew or through reasonable diligence could have learned and should have known, that its server infrastructure was vulnerable to data breaches.

95.    RPM invaded Plaintiff's and Class members' right to privacy and intruded into Plaintiff's and Class members' private affairs by disclosing their PII to unauthorized persons without their informed, voluntary, affirmative, and clear consent.

96.    As a proximate result of such unauthorized disclosures, Plaintiff's and Class members' reasonable expectations of privacy in their PII was unduly frustrated and thwarted. RPM's conduct amounted to a serious invasion of Plaintiff's and Class members' protected privacy interests.

97.    In failing to protect Plaintiff's and Class members' PII and in disclosing Plaintiff's and Class members' PII, RPM acted with malice and oppression and in conscious disregard of Plaintiff's and Class members' rights to have such information kept confidential and private.

98.    Plaintiff seeks injunctive relief on behalf of the Class, restitution, and all other damages available under this Count.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff makes the following prayer for relief, on behalf of himself and the proposed Class:

A.    An order certifying the proposed Class pursuant to Federal Rule of Civil Procedure 23 and appointing Plaintiff and his counsel to represent the Class;

B.    An order awarding Plaintiff and Class members monetary relief, including actual and statutory damages;

C.    Equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class members'

CLASS ACTION COMPLAINT - 17
Case No.



PII, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class members;

D.    Equitable relief compelling Defendant to utilize appropriate methods and policies with respect to its data collection, storage, and safety practices and to disclose with specificity to Class members the type of data compromised in the Data Breach, and other information required under the laws cited herein;

E.    Equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

F.    An award of costs of suit and attorneys' fees, as allowable by law;

G.    An award of pre-judgment and post-judgment interest, as provided by law;

H.    Leave to amend this Complaint to conform to the evidence produced at trial; and

I.    Such other and further relief as this Court may deem just and proper.

<strong>DEMAND FOR JURY TRIAL</strong>

Plaintiff demands a trial by jury on all claims so triable.

Dated: December 2, 2022                  Respectfully Submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By:   _/s/ Thomas E. Loeser_
    THOMAS E. LOESER (WSB# 38701)
1301 Second Ave, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email:  toml@hbsslaw.com

TINA WOLFSON (pro hac vice to be filed)
AHDOOT & WOLFSON, PC
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
Email: twolfson@ahdootwolfson.com



1

2    ANDREW W. FERICH (pro hac vice to be filed)
     AHDOOT & WOLFSON, PC
3    201 King of Prussia Road, Suite 650
     Radnor, PA 19087
4    Telephone: 310.474.9111
     Facsimile: 310.474.8585
5    Email: *aferich@ahdootwolfson.com*

6    *Attorneys for Plaintiff, David Tristan*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

